IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ANTOINE K.,[1]

                Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                Defendant.

No. 3:24-cv-01455-YY

OPINION AND ORDER

YOU, Magistrate Judge.

Plaintiff Antoine K. seeks judicial review of the Social Security Commissioner ("Commissioner")'s final decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"). 42 U.S.C. §§ 401–33. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). For the reasons set forth below, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

**PROCEDURAL HISTORY**

Plaintiff filed an application for DIB January 4, 2021, alleging a disability onset date of November 28, 2020. Tr. 205-11. The Commissioner denied Plaintiff's claim initially, and on reconsideration. Tr. 82-87, 89-93. Plaintiff filed a written request for a hearing, and a hearing was held before an administrative law judge in August, 2023. Tr. 32-51. The ALJ issued a

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION AND ORDER

decision finding Plaintiff not disabled within the meaning of the Act. Tr. 14-31. The Appeals Council denied Plaintiff's request for review on August 6, 2024. Tr. 1–6. Thus, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and " 'may not affirm simply by isolating a specific quantum of supporting evidence.' " *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date, November 28, 2020. Tr. 20. At step two, the ALJ found Plaintiff had the following severe, medically determinable impairments: degenerative changes to the thoracic spine status post thoracic laminectomy for compression fracture and bilateral adhesive capsulitis. Tr. 20. At step three, the ALJ found no impairment met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 20. The ALJ assessed that Plaintiff had the residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) except the claimant can never climb ladders, ropes, and scaffolds; can never crawl; can only occasionally reach to shoulder height or perform overhead reaching; occasionally climb ramps and stairs; and occasionally crouch, stoop, and kneel.

Tr. 20-21.

At step four, the ALJ determined that Plaintiff could perform past relevant work as an electronic assembler as generally performed. Tr. 25. As a result, the ALJ found Plaintiff not disabled. Tr. 25.

## DISCUSSION

Plaintiff argues the ALJ erred by (1) discrediting his subjective symptom statements without clear and convincing reasons, (2) failing to craft an RFC supported by substantial evidence, and (3) relying on vocational expert testimony that was not supported by substantial evidence. Pl. Br., ECF 11.

3 – OPINION AND ORDER

I.      **Symptom Testimony**

Plaintiff contends the ALJ erred by discrediting his testimony about the combined effect of his back and shoulder impairments. Pl. Br. 15-23. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

4 – OPINION AND ORDER

At his August 2023 hearing, Plaintiff testified that he had a "hard time" both standing and sitting. Tr. 39. He reported difficulties driving and holding a steering wheel due to muscle spasms in his right shoulder and vibrations from the car that "make[] [his] condition worse." Tr. 39. Plaintiff could raise his left arm only a bit higher than shoulder level, but could not reach shoulder level with his right arm. Tr. 39, 45. He had problems using his hands to hold a glass or turn a doorknob because of his shoulder impairment, and while he could perhaps carry a gallon of water, he could not do so for a long time due to shoulder pain. Tr. 39-42. He could walk for about an hour before needing to take a rest due to lower back pain. Tr. 41.

Plaintiff further testified that, while his back was initially treated with surgery followed by physical therapy and injections, he developed a worsening and debilitating shoulder impairment about a year after his surgery. Tr. 42-43, 45. According to plaintiff, the orthopedics department speculated that this new impairment could be related to his back injury, gave him additional joint injections, and referred him to physical therapy. Tr. 45-46.

In a written statement, Plaintiff explained that his back injury prevented him from bending his back, twisting, turning, standing, or sitting for long periods of time, reaching objects on the floor or on low shelves, and handling and grabbing objects. Tr. 261-262, 263. He indicated that he was unable to perform any household chores or yard work and needed assistance bathing and drying himself. Tr. 261. He needed a walker and could not drive because he was not able to sit for a long time. Tr. 262. He could only lift 15 pounds, stand for 10 minutes, and walk for 200 feet before having to stop and rest. Tr. 264. As of May 2022, Plaintiff reported being unable to hold his baby niece (weighing about 26 pounds) for more than a minute and needed assistance taking her out of his arms. Tr. 298. In addition, he was unable to raise his hands at head level without severe pain. Tr. 298.

5 – OPINION AND ORDER

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 22. Specifically, the ALJ found Plaintiff's symptom allegations were inconsistent with objective medical evidence and failure to seek treatment. Tr. 24-25.

The ALJ reasonably discounted Plaintiff's alleged limitations stemming from his back impairment as inconsistent with objective medical evidence in the record.[2] *See Smartt*, 53 F.4th at 498 (finding that conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony); 20 C.F.R. § 416.929(c)(2). At the outset, the ALJ noted Plaintiff's back surgery in December 2020 and his testimony that thereafter he had long-term difficulties with activities like standing, sitting, bending, reaching on low shelves, and performing several daily chores around the house. Tr. 22-23 (citing Tr. 39-42, 261-62). In contrast to these allegations, however, the ALJ pointed to numerous objective medical records that showed Plaintiff was not so limited. For example, the ALJ cited treatment notes from four months after Plaintiff's back surgery, in April 2021, showing he reported doing much better with 5/5 strength, intact

---

[2] In his Reply, Plaintiff argues the ALJ erred by only finding the medical evidence "does not support the alleged level of limitation," rather than identifying inconsistencies between the medical record and his testimony. Reply 9-10, ECF 19. This difference is significant, Plaintiff believes, because "'[a]lthough an ALJ may use inconsistent objective medical evidence in the record to discount subjective symptom testimony, the ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony.'" *Id.* (citing *Ferguson*, 95 F.4th at 1200). Plaintiff is correct that lack of support in the record is not enough, on its own, for an ALJ to rely upon to discount a social security claimant's testimony. *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). Despite Plaintiff's framing, however, that is not what the ALJ did here. As described above, the ALJ identified several contradictory examples in the medical record, and directly contrasted them to Plaintiff's testimony when discounting it. Tr. 21-24.

sensations, and good range of motion. Tr. 23 (citing Tr. 775). The ALJ observed that after Plaintiff recovered from surgery, he walked without gross ataxia or difficulty, and that later reports continued to show normal gait, normal strength, and no neurological abnormalities. Tr. 23 (citing Tr. 771, 797, 831, 834, 839-840, 884). Addressing Plaintiff's testimony about lack of strength—i.e., that he could only lift 15 pounds and was unable to hold his 26-pound baby niece—the ALJ noted that the medical records showed "normal strength." Tr. 23 (citing Tr. 778 (chart notes from January 4, 2021, showing 5/5 strength), 834 (chart notes from October 13, 2022, showing 5/5 strength). Finally, the ALJ acknowledged that while chiropractic treatment notes suggested greater limitations, they were likewise inconsistent with the larger record. Tr. 23. In all, the ALJ cited substantial evidence to support the decision to discount Plaintiff's testimony regarding the extent of his back-related limitations.

The ALJ also cited substantial evidence of conflicting objective medical evidence in discounting Plaintiff's testimony about the extent of his shoulder limitations. At the hearing and in written submissions, Plaintiff claimed that he could raise his left arm only a bit higher than shoulder level and could not reach shoulder level with his right arm. Tr. 39, 45. He elaborated that his capsulitis gave him problems doing everyday tasks like holding a steering wheel, holding a glass, and turning a doorknob. Tr. 39-42. The ALJ cited contrary objective medical evidence showing Plaintiff had intact range of motion and 5/5 strength in bilateral upper extremities, which indicated that while discomfort was present, it did not significantly impair functional movement. Tr. 23; *see* Tr. 834, 839-840, 865). The ALJ further noted that, in January and April 2022, Plaintiff reported left shoulder pain, but range of motion was intact and he had 5/5 bilateral upper extremity strength. Tr. 839-842. In July 2022, Plaintiff had an "unremarkable" shoulder MRI with no soft tissue damage. Tr. 831, 834, 861. In October 2022, Plaintiff reported bilateral

7 – OPINION AND ORDER

shoulder pain, with pain starting when he raised his arms above shoulder height or behind his back. Tr. 834. But as the ALJ observed, examination of the shoulders appeared normal, with some pain on palpation and range of motion, and plaintiff had 5/5 upper extremity strength and good range of motion. Tr. 834. In sum, the ALJ cited substantial evidence of strength and good range of motion, which contradicted Plaintiff's allegations of greater shoulder-related limitations.[3]

Plaintiff argues the ALJ "failed to account for significant objective evidence consistent with [his] subjective complaints." Pl. Br. 22; Pl. Reply 10 (noting "there was other medical evidence supporting Plaintiff's testimony"). Plaintiff specifically highlights that "orthopedic testing revealed significant back, neck and bilateral shoulder pain, moderate to severe widespread muscle spasms, and restricted ranges of motion." Pl. Reply 10 (citing, inter alia, Tr. 784, 786, 788, 811, 882, 884, 904, 910). As noted above, the ALJ directly addressed this evidence, and discounted it because it conflicted with other aspects of the record. Tr. 23. Plaintiff's arguments emphasizing these more supportive aspects of the record would require this court to re-weigh the evidence, which is beyond the scope of review. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ."). Even when there are two reasonable interpretations—Plaintiff's and the ALJ's—the ALJ's interpretation must prevail. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the

---

[3] Defendant also tries to bolster the ALJ's conclusion with impermissible *post hoc* arguments that Plaintiff's impairments do not meet the 12-month disability duration requirement and that his testimony conflicts with daily activities. Def. Br. 2–3, ECF 18. However, the Court may consider only those reasons relied upon by the ALJ, not Defendant's *post hoc* rationalizations. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (stating the court "is constrained to review the reasons the ALJ asserts"). Because these reasons were not part of the ALJ's analysis, the Court declines to consider them.

[Commissioner's] conclusion that must be upheld."). Against that backdrop, Plaintiff cannot establish error by simply advancing a different interpretation of the medical evidence.

The ALJ also rejected Plaintiff's testimony concerning his back and shoulder limitations in part because the evidence demonstrated improvement with treatment. Tr. 22-24. An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence of improvement in the medical record. *Carmickle*, 533 F.3d at 1161. If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

The medical records cited by the ALJ show that surgery and medication helped Plaintiff's back and shoulder symptoms, and this was a clear and convincing reason to discount his symptom testimony about these impairments. For example, in December 2020, Plaintiff underwent back surgery and had a screw inserted in his spine. Tr. 358. Afterwards, Plaintiff was treated with medication, and by April 2021, he reported doing much better and that he no longer needed pain medications. Tr. 775. The ALJ observed that by July 2021, Plaintiff reported he was more and more physically active following treatment. Tr. 773. And the ALJ observed that by September 2021, Plaintiff's treatment had helped to the extent he could carry out his activities of daily living without assistance despite some stiffness and soreness when bending forward. Tr. 771. The ALJ appropriately considered this evidence in determining that Plaintiff's symptoms

9 – OPINION AND ORDER

were manageable with appropriate medications, and this was another clear and convincing basis to discount Plaintiff's symptom testimony.[4]

## II.    RFC

The RFC is the most a person can do, despite the person's physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, available at 1996 WL 374184. An ALJ need only include limitations in the RFC that are supported by the record. *See, e.g., Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

Plaintiff argues it was error for the ALJ to rely on "stale medical assessments from State Agency physicians" when formulating the RFC. Pl. Br. 23-24. The ALJ considered the State Agency medical opinions from 2021 and 2022, and ultimately "d[id] not find [them] persuasive" because while "[t]he opinions were well supported and consistent with the evidence at the times they were made[,] . . . the later evidence showed some positive findings such as reduced range of motion in the shoulders." Tr. 24. The ALJ found "[t]his is consistent with greater limitations, and

---

[4] The ALJ also discounted Plaintiff's subjective symptom testimony regarding his physical symptoms because it was inconsistent with a conservative treatment history. Tr. 23-24. The Court need not resolve whether the ALJ supported this basis with substantial evidence. Any error in considering whether Plaintiff's treatment was "conservative" is harmless because the ALJ identified other sufficient bases to discount his symptom testimony. *See Molina*, 674 F.3d at 1115 (holding ALJ's error "harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

10 – OPINION AND ORDER

. . . adjusted the residual functional capacity accordingly." Tr. 24. Based on medical evidence of reduced shoulder range of motion and normal strength, the ALJ concluded that Plaintiff could do a range of light work. Tr 20-21. Thus, the ALJ did not rely only on "stale" medical assessments by the State Agency physicians, but considered them to the extent they were "well supported and consistent with the evidence at the time they were made" and augmented them with more recent medical evidence to craft the RFC.

Plaintiff contends the ALJ erroneously "relied on . . . an unremarkable diagnostic study when such a study was irrelevant to Plaintiff's shoulder condition (used to rule out other impairments)." Reply 9. Treatment notes from Plaintiff's June 2022 medical appointment indicate there was a question whether plaintiff's diagnosis was a "[r]otator cuff injury vs. adhesive capsulitis." Tr. 838. Thereafter, in July 22, plaintiff underwent an MRI, the "reason" for which was broadly described as "[c]hronic left shoulder pain." Tr. 916. The MRI revealed "[n]o rotator cuff tear" and included several other findings. Tr. 916. At plaintiff's orthopedic appointment in December 2022, the MRI was characterized as "overall unremarkable from acute symptomology." Tr. 864. Thus, the MRI was relevant to assessing plaintiff's shoulder condition, and not just to rule out a rotator cuff injury, and the ALJ did not err in relying on it to discount plaintiff's subjective symptom testimony or in fashioning the RFC.

Finally, in an effort to undermine the ALJ's RFC formulation, Plaintiff reasserts arguments about the ALJ's reliance on "selective medical evidence." Reply 9. Because the ALJ's decision to discount Plaintiff's testimony is supported by with substantial evidence, it was reasonable for the ALJ to omit limitations expressed in those aspects of the record from the RFC. *See Bayliss*, 427 F.3d at 1217. The RFC is otherwise supported by the record, and the Court will not overturn the ALJ's opinion on this basis either.

11 – OPINION AND ORDER

### III.  Step Four

Plaintiff argues the ALJ erred at step four by relying on vocational expert testimony that did not accurately resolve a conflict between his occasional ability to reach at shoulder height and the past relevant work identified by the vocational expert. Pl. Br. 24-26. "Under Social Security Ruling [SSR] 00-4p, ALJs must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs [Vocational Experts] and information in the Dictionary of Occupational Titles (DOT)." *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1194 (9th Cir. 2022) (cleaned up). When a conflict exists, the ALJ must "explain in the . . . decision how [the ALJ] . . . resolved the conflict." SSR 00-4p at *4.

Here, the ALJ reasonably identified the potential conflict between the VE testimony, the DOT, and the RFC, and explained in her written decision how Plaintiff could perform past relevant work as generally performed. At the hearing, the VE testified that Plaintiff's past relevant work as an electronic assembler is light, semi-skilled work as generally performed in the national economy. Tr. 47. *See* Electronic Assembler, *Dictionary of Occupational Titles* (DOT) 726.684-018, 1991 WL 679596. The ALJ asked the VE whether a person with Plaintiff's vocational profile and RFC—specifically someone who could "reach[] your arm to shoulder height or even overhead only occasionally"—could perform the electronics assembler job as generally performed in the national economy, Tr. 47, 49, and the VE testified that he could. Tr. 48-49. The VE further shared that she used SkillTRAN, Job Browser Pro as a vocational data source to assist in making her determination. Tr. 48. The VE elaborated that her testimony was generally consistent with the DOT, except that she deviated from the DOT where "[the] reaching overhead and the climbing is based on my professional experience" Tr. 49. Because the VE identified and explained the conflict between her testimony and the DOT, and the ALJ elicited

sufficient testimony to resolve that conflict and confirmed that someone like Plaintiff who could only reach to shoulder height or overhead occasionally could perform the electronic assembler as generally performed, the ALJ did not err at step four.

## CONCLUSION

The Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED October 24, 2025.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

13 – OPINION AND ORDER